UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RAYMOND WIERZBIC, et al.,

                         Plaintiffs,

        v.                                                **DECISION AND ORDER**
                                                          13-CV-978S
COUNTY OF ERIE, et al.,

                         Defendants.


## I.    INTRODUCTION

Plaintiffs Raymond Wierzbic, Bernice Wierzbic, Brian Wierzbic, and Angelene Wierzbic[1] bring this action against Defendants the County of Erie, the Erie County Sheriff's Department, Erie County Sheriff Timothy Howard, Deputy Erie County Sheriff Michael Hoock, Deputy Erie County Sheriff Jason Weisser, Deputy Erie County Sheriff Thomas Was, Deputy Erie County Sheriff James Flowers (together, the "Erie County Defendants"), as well as the East Aurora Police Department, East Aurora Police Chief Ronald Krowka, and East Aurora Police Officer Robert Braeuner (together, the "East Aurora Defendants").  Presently before this Court are motions for summary judgment from the Erie County Defendants, the East Aurora Defendants, and Plaintiffs.  For the following reasons, the East Aurora Defendants' motion is granted, the Erie County Defendants' motion is granted in part and denied in part, and Plaintiffs' motion is denied.

---

[1] Raymond and Bernice are the parents of Brian and Angelene.  For ease of reference, Plaintiffs are referred to by their given names.

## II.    BACKGROUND[2]

On July 2, 2012, Erie County Deputy Sheriff Michael Hoock arrived at 49 Willis Road in the Town of Aurora, New York, to serve process in a civil action on Plaintiff Raymond Wierzbic.  Deputy Hoock testified during Plaintiffs' criminal trial that, on the day in question, he was in uniform and driving a marked "civil" Sheriff's vehicle.  (See Docket No. 84-5 ("Hoock Testimony") at 84, 128.)  He had reviewed the papers he was carrying and believed the property to be owned by Raymond Wierzbic.[3]  (Id. at 152.)

When Deputy Hoock exited his car at 49 Willis Road, he observed Brian, Raymond, and Bernice on the property.  (Id. at 84-85.)  Deputy Hoock approached Plaintiffs and asked, "Who is Raymond Wierzbic? Is he here?" and Brian responded by stating that Raymond did not live on the property and telling Deputy Hoock to get out.  (Id. at 87.)  Deputy Hoock "explained to [Plaintiffs that he] needed to find out who Raymond is . . . and they proceeded to tell [him] that, to get out of here, and they're not going to cooperate."  (Id. at 88-89.)  Deputy Hoock testified that Plaintiffs became "more and more hostile" and that "no matter what [he] said to try to diffuse [sic] the situation, it didn't seem to make a difference."  (Id. at 89.)  He then made a "demand" to see identification, which they "pretty much ignored."  (Id.)

After Deputy Hoock had been told repeatedly to leave the property, and had made a "demand" for identification, he noticed Raymond pick up a pair of pliers.  (Id.)  At that point, he was approximately 10 yards away from Raymond, who raised the pliers up to

---

[2] For the sake of brevity and clarity, this Court will recite only those facts pertinent to the pending motion. The facts are drawn from the parties' Rule 56 Statements of Facts and the attached exhibits, and are undisputed unless otherwise noted.

[3] For ease of reference, the site of the incident is referred to as "Plaintiffs' property" throughout.  However, as no evidence has been submitted on the subject, this Court makes no determination as to the ownership of 49 Willis Road.

"head-level" and waved them while shouting "get out of here[, y]ou've got no right to be here, et cetera." (Id. at 89-90.)   Although Raymond did not move toward him, Deputy Hoock felt "very threatened" because Raymond refused to put the pliers down and said "I don't have to do that" when Deputy Hoock instructed him to do so, saying that it was "an officer safety issue." (Id. at 90-91.)   On cross-examination, when asked why he did not comply with the Plaintiffs' requests that he leave the property immediately, Deputy Hoock testified:  "It wasn't initially said to me, right away.  And, the pliers became an incident at that point." (Id. at 139.)  This appears to be at odds with Deputy Hoock's earlier testimony that Brian's initial response to him was an instruction to leave (id. at 87), and that he did not notice the pliers until after he had been told to leave several times (id. at 89).  He later confirmed on cross-examination that Raymond "told [him] numerous times to get off the property, even before he picked up the pliers."  (Id. at 166.)

After Raymond had waved the pliers for "about a good minute" without coming any closer, Deputy Hoock radioed for backup.  (Id. at 92.)  Raymond and Brian had walked away from him, toward a barn farther back on the property, and he followed at a safe distance.  (Id. at 93-94.)  As Raymond approached the barn, he threw the pliers inside and turned to face Deputy Hoock.  (Id. at 94.)  Deputy Hoock told Raymond that he had radioed for backup and that Raymond was under arrest for menacing.  (Id. at 95-96.)  Brian then approached Deputy Hoock and "bumped" or shoulder-checked him, seemingly trying to stop him from walking toward Raymond.  (Id. at 95-96.)  Deputy Hoock told Brian to "back off" or he would be arrested for obstruction; Brian responded that he "didn't care" and that Deputy Hoock was "not arresting anybody."  (Id. at 96.)  Deputy Hoock then told Raymond to put his hands behind his back and, when Raymond refused, he attempted

to use pepper spray to "subdue" Raymond.  (Id. at 97-98.)  However, the pepper spray failed and Raymond walked toward Deputy Hoock and grabbed his sunglasses and vest, at which point Brian began grabbing Deputy Hoock as well.  (Id. at 99.)  As the three were pushing and shoving each other, Brian yelled, "that's it, we're calling the police" and Deputy Hoock broke apart from them and said, "That's a good idea.  Let's call the East Aurora P-D [sic]."  (Id. at 100-01.)

Deputy Hoock, Raymond, and Brian ceased fighting and proceeded back toward the driveway.  (Id. at 102.)  While the timeline is not clear from Deputy Hoock's testimony, it appears that after he radioed for backup, and before the backup arrived, Brian provided his identification to Deputy Hoock and the service of process was completed.  (See id. at 163-65; Docket No. 83-10 ("Criminal Appeal") at 5.)  Three Erie County Sheriff's Deputies, Defendants Weiss, Was, and Flowers, arrived on the scene soon after Deputy Hoock's radio call (id. at 102), while Bernice was still on the line with 911 attempting to get aid from the East Aurora Police (Docket No. 81-16 ("Bernice Wierzbic EBT") at 51).  Deputy Hoock pointed to Raymond and Brian and told the Sheriff's Deputies that the men were under arrest.  (Hoock Testimony at 103.)  East Aurora Police Officer, Defendant Braeuner, arrived after the Sheriff's Deputies.  He was responding to a call from dispatch reporting that the Sherriff's Department was requesting backup at 49 Willis Road.  (Docket No. 81-9 ("Braeuner Aff.") at ¶ 7.)  He affirmed that had no knowledge of the events that had transpired there or why he was summoned as backup but, based on his experience, "when an officer calls for backup, he is in trouble and needs immediate assistance."  (Id.)

Deputy Hoock testified that, when the Sheriff's Deputies approached and attempted to make an arrest, "Raymond started throwing punches."  (Hoock Testimony

at 104.)  Deputy Hoock put Raymond in a headlock, but Raymond put Deputy Hoock in a headlock as well, at which point the Deputy "felt like [he] was in trouble" and couldn't breathe.  (Id.; see also Docket No. 81-17 ("Raymond Wierzbic EBT") at 57-58.)  Eventually Raymond broke his hold, and the Sheriff's Deputies subdued him with a functioning canister of pepper spray.  (Id. at 111.)  Officer Braeuner states that, when he arrived, he observed Deputies Hoock and Flowers in a verbal altercation with Raymond and heard them tell Raymond that he was under arrest.  (Braeuner Aff. at ¶ 8.)  He confirmed that Raymond began to fight with the Sheriff's Deputies as they attempted to handcuff him, and that he saw Brian and Bernice trying to pull the deputies away from Raymond.  (Id. at ¶¶ 8-9.)  Brian and Bernice were yelling that they wanted the East Aurora Police, and Officer Braeuner approached them and attempted to explain that he was an East Aurora Police Officer.  (Id. at ¶ 10.)  He also attempted to move Bernice away from the area where the Sheriff's Deputies were struggling with Raymond.  (Id.)

Bernice did not comply with Officer Braeuner's instructions to stay clear of the altercation and, as she tried to get past him, she struck or shoved him in the chest, after which he arrested her.  (Id.)  He then helped restrain Raymond by assisting the Sheriff's Deputies to put his arm into a handcuff.  (Id. at ¶ 11.)  Officer Braeuner contends that this—touching Raymond's arm to assist in cuffing him—was his only physical contact with Raymond.  Plaintiffs do not dispute that Raymond physically resisted Deputy Hoock during the arrest (see Raymond Wierzbic EBT at 57-58), that Bernice either hit or pushed Officer Braeuner after he had led her away from the altercation (see Bernice Wierzbic EBT at 51), and that Officer Braeuner's only physical contact with Raymond was holding

his arm during the arrest.  Chief Krowka was not present at the scene and did not confer with or direct Officer Braeuner as to how to respond to the call.  (Braeuner Aff. at ¶ 17.)

Raymond was charged with violations of New York Penal Law sections 205.30 (resisting arrest), 195.05 (obstructing governmental administration), 120.15 (menacing in the 3rd degree), and 240.26 (harassment in the 2nd degree).  (Docket No. 83-10 ("Criminal Appeal") at 2.)  Brian was charged with violation of New York Penal Law sections 120.00(1) (assault in the 3rd degree), 195.05 (obstructing governmental administration), and 205.30 (resisting arrest).  (Id.)  Bernice was charged with violation of New York Penal Law sections 205.30 (resisting arrest) and 195.05 (obstructing governmental administration).  (Id.)  After a non-jury trial before Town of Aurora Judge Jeffrey Markello on June 12 and 13, 2013, Raymond was convicted on all counts, Brian was convicted of obstructing governmental administration, and Bernice was acquitted.  (Docket No. 83-9.)  On December 4, 2013, Raymond and Brian were each sentenced to a conditional discharge, fined $750.00 and ordered to perform 20 hours of community service.  (Criminal Appeal at 2.)

On September 30, 2014, Erie County Court Judge Michael Pietruszka reversed the convictions.  (Id.)  Judge Pietruszka found that "Erie County Sheriff's Deputy Michael Hoock entered upon the [Wierzbics'] property in order to serve lawful process on [Raymond], in accordance with his obligations under County Law Section 650(2) as applied through PL Section 35.20(4)(b)(i)."[4]  (Id. at 5.)  However, this lawful entry ended

---

[4] Judge Pietruszka explains that:  "PL Section 35.20(4)(b)(i) includes in the persons licensed or privileged to be in buildings or upon premises police officers or peace officers acting in the performance of their duties, and County Law Section 650(2) includes in the duties of sheriff the duty to serve all civil process."  (Criminal Appeal at 5.)

when service was completed on Brian, which the Criminal Appeal suggests occurred before Deputy Hoock's backup arrived and the physical struggle ensued.  (Id.)

> The Deputy acknowledges that his duty was discharged in executing the affidavit of service for the civil process he was sent out to serve . . . .  He no longer was privileged to remain upon the [Plainitffs]' property under the circumstances herein.  At that point, the Deputy had no probable cause to believe that anyone at the location was involved in illegal activities.

(Id. at 5-6.)  He found that Deputy Hoock's actions were not privileged pursuant to PL Section 35.20(4)(b)(i) and that his remaining on the property "violated the [Plainitffs]' constitutional rights."  (Id. at 6.)  Judge Pietruszka granted the reversal because, *inter alia*:

> Once [Deputy Hoock's] duty was discharged, the Deputy had no objective, credible reason to remain [on Plaintiffs' property].  The Deputy's actions escalated the tension of the situation unnecessarily.  He should have completed his assignment and left the premises when requested.

(Id. (internal quotation marks omitted).)

The Erie County Sheriff's Office maintains a manual pertaining to its civil process division entitled, "County of Erie, Office of the Sheriff, Civil Process Division, Manual of Standard Operating Procedure."  (Docket No. 84-8.)  The manual instructs that process servers should limit inquiries when attempting to locate a person and that, "There is no way to compel a person to identify himself."  (Id. at 2)  Further, "If you gain peaceful entrance and are subsequently ordered off the premises after searching for the defendant, you should leave immediately."  (Id. at 3)  It also states, "Remember that you are not acting under authority of a search warrant and could therefore be guilty of trespass.  Use discretion!"  (Id.)

Plaintiffs filed this action on September 27, 2013.  (Docket No. 1.)

## III.   DISCUSSION

Plaintiffs allege both federal causes of action pursuant to § 1983 and intentional torts under New York state law.  The East Aurora Defendants have sought summary judgment dismissing all claims against them; Plaintiffs and the Erie County Defendants seek partial summary judgment.

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law."  Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010).  A court's function on a summary judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id., 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) cert. denied, 540 U.S. 811 (2003) (quoting Anderson, 477 U.S. at 248).  A court must also "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

Plaintiffs have responded in opposition to certain of Defendants' summary judgment arguments and failed to respond to others.  Although Plaintiffs did not explicitly abandon the claims and defenses to which they failed to respond, this Court deems them abandoned based on the inferences that "may be fairly drawn from the papers and

circumstances viewed as a whole." Jackson v. Fed. Exp., 766 F.3d 189, 196 (2d Cir. 2014). Further, Plaintiffs have not complied with Local Rule 56(a)(2). Plaintiffs filed no response to the Erie County Defendants' Rule 56 Statements of Facts. (See Docket No. 92.) They filed a limited response to the East Aurora Defendants but, rather than addressing each paragraph of the East Aurora Defendants' Statement of Facts (as the rule dictates), their response consists of a 247-page court transcript. (See Docket No. 90.) Plaintiffs' failures to comply with the local rules do not call for the Court "to perform an independent review of the record to find proof of a factual dispute." Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (citations omitted); see Covelli v. Nat'l Fuel Gas Distrib. Corp., 2001 WL 1823584, at *1 (W.D.N.Y. 2001) (holding that the district court "may, but is not required to, search the record for evidence which the party opposing summary judgment fails to point to in his [Local Rule 56] statement").

Defendants must still meet their burden to establish that summary judgment is appropriate under the law and that no material issue of fact remains for trial. See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" (emphasis in original) (quoting Amaker v. Foley, 247 F.3d 677, 681 (2d Cir. 2001)). However, this Court deems the Defendants' Statements of Facts admitted to the extent that they are supported by admissible evidence and not contradicted by evidence of which this Court has notice. Compare Holtz v. Rockefeller & Co., 258 F.3d 62, 73-74 (2d Cir. 2001) ("[W]here there are no[ ] citations or where the cited materials do not support the factual assertions in the [Local Rule 56] Statements,

the Court is free to disregard the assertion" and review the record independently.), with Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."), and Monahan v. N.Y.C. Dep't of Corrections, 214 F.3d 275, 292 (2d Cir. 2000) ("While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.") (quotation marks omitted).

## A.    The Erie County Sheriff's Department and East Aurora Police Department

Defendants move for summary judgment as to all claims against the Erie County Sheriff's Department and East Aurora Police Department on the grounds that they are sub-units or agencies of their municipalities and not subject to suit.  Plaintiffs do not oppose this motion.  "Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."  Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); see also Kamholtz v. Yates County, No. 08-CV-6210, 2008 WL 5114964, at *8-9 (W.D.N.Y. Dec. 3, 2008) (dismissing claims against the Yates County Sheriff's Department on the ground that a municipality's police department is not subject to suit because it is considered an administrative unit of the county); Baker v. Willett, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) ("A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.").  Accordingly, the motions are granted and all claims against the Erie County Sheriff's Department and East Aurora Police Department are dismissed.

**B.      Federal Law Claims**

Plaintiffs bring federal claims under 42 U.S.C. § 1983, alleging eight causes of action:   (1) excessive force; (2) malicious prosecution; (3) failure to intervene; (4) conspiracy; (5) violation of First Amendment rights; (6) violation of Fifth Amendment rights, (7) false arrest, and (8) false imprisonment.   Section 1983 imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.   See 42 U.S.C. § 1983. The section does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.   Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

1.   Erie County

Defendant Erie County argues that the federal claims against it should be dismissed because Plaintiffs have failed to establish municipal liability under § 1983. "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of respondeat superior.'" Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (quoting Pembaur v. City of Cincinnati, U.S. 469, 478, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).   In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal "policy or custom" from which the alleged injury arose.   Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978).   Plaintiffs do not oppose this motion, and their claims cite only policies intended to avoid the type of misconduct alleged here.   (See Docket No. 84-8, County of Erie, Office of the Sheriff,

Civil Process Division, Manual of Standard Operating Procedure).   Accordingly, Erie County's motion for summary judgment is granted and the § 1983 claims against it are dismissed.

2.  <u>Sheriff Howard and Chief Krowka</u>

Defendants argue that the § 1983 supervisory liability claims against Sheriff Howard and Chief Krowka must also be dismissed.   "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."   <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (citation and quotation marks omitted).   In other words, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on <em>respondeat superior</em>."   <u>Hernandez v. Keane</u>, 341 F.3d 137, 144 (2d Cir. 2003).   Plaintiffs do not oppose the motions, and there is no allegation that Sheriff Howard or Chief Krowka had any personal involvement in the alleged violations.   Accordingly, the motions for summary judgment are granted and the § 1983 claims against Sheriff Howard and Chief Krowka are dismissed.

3.  <u>Official Capacity Claims</u>

Defendants argue that all federal claims against individual defendants in their official capacities should be dismissed as duplicative.   The Second Circuit has endorsed the dismissal of § 1983 claims against individual officers in their official capacity, "[b]ecause the claim against [individuals] in their official capacity is essentially a claim against the [municipality]."   <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001); <u>Castanza v. Town of Brookhaven</u>, 700 F. Supp. 2d 277, 284 (E.D.N.Y. 2010) ("Since the Town is named in the Complaint, the claims against [the d]efendants, in their official

capacities, are dismissed as duplicative and redundant."). Accordingly, because the federal claims against Defendants in their official capacities are duplicative of the claims against the municipalities, the motions for summary judgment are granted and the claims are dismissed.

4. First and Fifth Amendment Claims

All Defendants have moved for dismissal of Plaintiffs' First Amendment claims on the grounds that Plaintiffs' speech was not actually chilled by the encounter. See Curley, 268 F.3d at 73. They have also moved for dismissal of the Fifth Amendment claims on the grounds that such claims may only be brought against federal, not state, officials. See Dusenbery v. United States, 534 U.S. 161, 167, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002). Plaintiffs do not oppose these arguments. Accordingly, Defendants' motions for summary judgment are granted the First and Fifth Amendment claims are dismissed.

5. Officer Braeuner

Officer Braeuner, who arrived at the Plaintiffs' property when the Sheriff's Deputies were already at the scene, seeks summary judgment on the federal claims against him, arguing that they should be dismissed because his actions were reasonable and appropriate based on the circumstances.

*Excessive Force*

Officer Braeuner moves for summary judgment as to the claim that he used unreasonable and excessive force during the events on July 2, 2012. Whether the force used to effect an arrest is "reasonable" or "excessive" turns on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Graham, 490 U.S. at 396 (internal

13

quotation marks omitted).   A number of factors must be considered in this analysis, including "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 251-52 (2d Cir. 2001) (internal quotation marks omitted).

Here, the only allegation of physical contact between Officer Braeuner and the Plaintiffs is contact incident to the arrest of Bernice and holding Raymond's arm while assisting the Sheriff's Deputies in handcuffing him.  (See Braeuner Aff. at ¶¶ 10-11.)  In both instances, there was a reasonable relationship between the need for force and the amount of force used.  It is undisputed that Bernice had either struck or shoved Officer Braeuner in an attempt to enter the altercation between Raymond and the Sheriff's Deputies.  (Id. at ¶ 10.)   Further, there is no dispute that Officer Braeuner observed Raymond violently resisting arrest by the Deputies (id. at ¶ 11), including by overpowering Deputy Hoock and placing him in a headlock.  (Hoock Testimony at 104; Raymond Wierzbic EBT at 57-58.)  There is no suggestion that Officer Braeuner's physical contact with Plaintiffs, which is alleged to have been minimal, was actuated by malice or a desire to cause harm.  Accordingly, the Johnson factors weigh against Plaintiffs, who "complain basically of the kind of de minimis physical contact common to virtually every custodial arrest."  Figueroa v. Mazza, 825 F.3d 89, 105-06 (2d Cir. 2016) (citing Graham, 490 U.S. at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.")).

This Court is not persuaded by Plaintiffs' argument that the force used on Raymond was inherently unreasonable because Officer Braeuner did not know why the arrest was made or whether probable cause existed. The undisputed facts show that Officer Braeuner's only knowledge when he came on the scene was that an officer was in trouble, and that he observed an altercation between Deputy Hoock and Raymond. Under these circumstances, Officer Braeuner reasonably believed that the force he used was necessary "to maintain or restore discipline." See Johnson, 239 F.3d at 252. See also Garcia v. Greco, No. 05-CV-9587, 2010 WL 446446, at *7 (S.D.N.Y. Feb. 9, 2010) ("The balancing inquiry for an excessive force claim may . . . take resistance to an arrest into account as a highly probative fact." (internal quotation marks and citation omitted)); Torres v. Dennis, No. 10-CV-0803 JS AKT, 2013 WL 2898142, at *4 (E.D.N.Y. June 13, 2013) (no excessive force where "Plaintiff had been actively resisting arrest and essentially putting up a physical fight with the officers"). Accordingly, the motion for summary judgment is granted and the excessive force claim against Officer Braeuner is dismissed.

*Failure to Intercede*

Officer Braeuner further moves for summary judgment as to the claim that he failed to stop the Sheriff's Deputies alleged violation of Raymond's constitutional rights. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). As such, liability may attach on a failure to intervene theory where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that

the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citation omitted); see also Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997).

Although Officer Braeuner did not intervene to stop the force being used on Raymond, there is no evidence that an objectively reasonable officer in his position would have perceived a constitutional violation and a need for intervention.  Plaintiffs present no evidence to dispute the facts put forth by Officer Braeuner:  that he arrived while Raymond was involved in an altercation with the Sheriff's Deputies, and that he had no basis to believe that the arrest was illegal or that the deputies' actions were otherwise unconstitutional.  (Braeuner Aff. at ¶¶ 7-9.)  Given the undisputed fact that Raymond was actively fighting the Sheriff's Deputies, including by putting Deputy Hoock in a headlock, it was objectively reasonable for Officer Braeuner to believe that the suspect required some degree of restraint or incapacitation.  See Mesa v. City of New York, No. 09 CIV. 10464 JPO, 2013 WL 31002, at *20 (S.D.N.Y. Jan. 3, 2013) (objectively reasonable to believe that plaintiff needed to be restrained when defendants believed that she had lunged at a fellow officer); Chepilko v. City of New York, No. 06-CV-5491 ARR LB, 2012 WL 398700, at *9 (E.D.N.Y. Feb. 6, 2012) (objectively reasonable to believe that "plaintiff posed a threat to the officers or surrounding crowd" where late-arriving officer observed arresting officer's apparent injury).

Plaintiffs argue that Officer Braeuner knew or had reason to know that the arrest was improper because Deputy Hoock was driving a "civil" sheriff's vehicle, because he had identified himself as a civil officer when he called for backup, and because Plaintiffs

had called East Aurora Police seeking help when Deputy Hoock began trying to arrest Raymond. Officer Braeuner argues that the dispatcher he spoke with did not identify the call for backup as having come from a "civil officer" and that, based on his experience, "when an officer calls for backup, he is in trouble and needs immediate assistance." Braeuner Aff. at ¶ 7. The dispute over Officer Braeuner's knowledge that Deputy Hoock was acting in a civil capacity need not be resolved because it does not raise a material question as to whether he could have known that the arrest was unconstitutional. Although Deputy Hoock was serving the duties of a civil officer, he maintained the authority to make criminal arrests when an individual violated the law. Further, Officer Braeuner was not obligated to investigate Plaintiffs' claims of innocence while the altercation was unfolding. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Ricciuti, 124 F.3d at 128 (citing Baker v. McCollan, 443 U.S. 137, 145-46, 99 S. Ct. 2689, 2695-96, 61 L. Ed. 2d 433 (1979)). Officer Braeuner entered a situation where the Sheriff's Deputies appeared to be in danger, and attempted to contain that danger. Whether or not that perception was correct in hindsight (or whether the deputies caused the dangerous situation in the first place), it was objectively reasonable for Officer Braeuner to allow the arrest to take place without attempting to intervene where the undisputed evidence shows that an officer appeared to be threatened. See Mesa, 2013 WL 31002, at *20. Accordingly, the motion for summary judgment is granted and the failure to intervene claim is dismissed.

*False Arrest and False Imprisonment*

Officer Braeuner further moves for summary judgment as to the claims for false arrest and false imprisonment.  To prevail on a false arrest claim, a plaintiff must prove that:  "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 119 (2d Cir.1995); see also Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012).  The elements are essentially the same for false imprisonment.  See Kilburn v. Vill. of Saranac Lake, 413 F. App'x 362, 363 (2d Cir. 2011) (analyzing the claims identically because, "under New York law, the claim is identical to a false arrest claim, and the federal claim looks to the elements of the state claim" (internal citations omitted)).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest" and false imprisonment.  Id. (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  The parties here do not dispute the material facts, therefore the existence of probable cause may be decided as a matter of law.  See Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007).

"A police officer has probable cause for an arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime[.]'"  Swartz v. Insogna, 704 F.3d 105, 111 (2d Cir. 2013) (quoting Weyant, 101 F.3d at 852).  This Court "must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty" and "should look to the totality of circumstances."

Fabrikant v. French, 691 F.3d 193, 214 (2d Cir. 2012) (quoting Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006)).  It is undisputed that, when Officer Braeuner arrived, he observed Raymond in a verbal altercation with the Sheriff's Deputies, and that this soon escalated into a physical altercation.  It is also undisputed that Bernice[5] either struck or shoved Officer Braeuner in an attempt to enter the physical altercation between Raymond and the Sheriff's Deputies.  Based on these circumstances, it was reasonable for Officer Braeuner—who was the last law enforcement official to arrive and is not alleged to have any knowledge of what took place prior to his arrival—to believe that probable cause existed to arrest both Raymond and Bernice.  See Mesa, 2013 WL 31002, at *11-12 (where plaintiff made "forcible contact" with defendant police officer's body, this was sufficient that "a reasonable officer could have believed that probable cause existed to arrest [plaintiff] for at least one of the misdemeanor offenses" of "harassment, resisting arrest, and disorderly conduct," even where all three were ultimately dismissed against plaintiff).   Again, Officer Braeuner was not required to "explore and eliminate every theoretically plausible claim of innocence before making an arrest," nor was he required to believe Plaintiffs' claims that the arrest was improper.  Ricciuti, 124 F.3d at 128 (finding that the police officer was entitled to qualified immunity for assault arrest despite defendant telling the officer he was innocent); see also Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989) (unreasonable and impractical to require that arrestee's innocent explanation be proven wrong or contradicted before arrest can be made).

---

[5] Officer Braeuner argues that he arrested only Bernice, and not Raymond.  Although there may be factual issues as to whether Officer Braeuner's assistance in handcuffing Raymond was sufficient to constitute an act of confinement, this Court need not address that issue because Officer Brauner had probable cause to act in both arrests.

Without any factual allegations suggesting that Officer Braeuner could have known of the prior alleged constitutional violations and torts, he was "entitled—indeed obliged—to assess for himself the risks presented from the totality of the circumstances in attempting to accommodate the interests of all concerned." Zalaski v. City of Hartford, 723 F.3d 382, 394 (2d Cir. 2013) (noting that "nothing in probable cause jurisprudence requir[es an] officer to accept suspect's assertion of innocence at face value"). Accordingly, Officer Braeuner's motion to for summary judgment on the false arrest and false imprisonment claims is granted and those claims are dismissed.[6]

*Malicious Prosecution, Conspiracy, and Equal Protection*

Finally, Officer Brauener moves for summary judgment as to of Plaintiffs claims for malicious prosecution, conspiracy, and violations of equal protection under § 1983. Plaintiffs do not oppose the motion.  Officer Braeuner argues that the malicious prosecution claim should be dismissed because Plaintiffs have not alleged actual malice, see Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009) (to succeed on a malicious prosecution claim under § 1983, a plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against him; (2) the proceeding was terminated in the plaintiff's favor; (3) there was no probable cause for the proceeding; and (4) the proceeding was instituted with malice), that the conspiracy claim should be dismissed because Plaintiffs have not alleged that he was involved in any plan with the Sheriff's Deputies, see Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (conspiracy claim

---

[6] However, this Court is not persuaded by Officer Braeuner's argument that the finding of guilt by the Town of Aurora Court demonstrates that probable cause existed for Raymond and Brian's arrests.  That conviction was reversed on appeal, and "a judgment that has been reversed, with instructions that the matter be dismissed, is null and void." Weyant, 101 F.3d at 854 (finding that district court erred in relying on reversed conviction as evidence of probable cause).  Further, having dismissed all federal claims against Officer Braeuner, this Court does not address his qualified immunity argument.

under § 1983 requires evidence that "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages"), and that the equal protection claim should be dismissed because Plaintiffs have failed to allege that they were treated differently than others who were similarly situated.  See Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). Accordingly, the motion is granted, and all federal claims against Officer Braeuner are dismissed.

**C.    State Claims**

Plaintiffs bring seven claims under New York state law:  1) false arrest; 2) false imprisonment; 3) assault; 4) battery; 5) intentional infliction of emotional distress; 6) negligent hiring and retention; 7) negligent training and supervision.[7]  Defendants have moved for summary judgment dismissing the claims against them.

1. Statute of Limitations

Defendants move for dismissal Plaintiffs' state-law claims on the grounds that they are time-barred.  Federal courts apply state statutes of limitations to state-law claims, see Vincent v. Money Store, 915 F. Supp. 2d 553, 560-61 (S.D.N.Y. 2013) (stating that it makes no difference if the state-law claims are presented in federal court based on diversity jurisdiction or supplemental jurisdiction), and apply state notice of claim statutes to state-law claims as well.  See Reyes v. City of New York, 992 F. Supp. 2d 290, 300 (S.D.N.Y. 2014).

---

[7] Plaintiffs have moved for summary judgment as to the state-law claim of trespass, which was not listed together with the other causes of action in the Complaint.  This Court addresses that claim below.

Defendants contend that the statute of limitations for Plaintiffs' state-law claims is one year, citing N.Y. C.P.L.R. § 215(3), which provides that actions for "assault, battery, false imprisonment, [or] malicious prosecution" shall be commenced within one year. However, the Second Circuit has stated that New York's General Municipal Law controls when a plaintiff sues a city for tortious conduct, and it also controls those claims against any employee of a city "if the municipality is required to indemnify the defendant pursuant to the General Municipal Law or any other statutory provision and is therefore 'the real party in interest.'" Conte v. Cty. of Nassau, 596 Fed. App'x 1, 5 (2d Cir. 2014) (quoting Ruggiero v. Phillips, 292 A.D.2d 41, 44, 739 N.Y.S.2d 797, 800 (4th Dep't 2002)). General Municipal Law § 50-j provides that a city is "liable for . . . any duly appointed police officer of such municipality, authority or agency for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment." See also LaGrange v. Ryan, 142 F. Supp. 2d 287, 295 (N.D.N.Y. 2001) (stating that notice of claim requirements are not limited to just negligence claims but must also be served for "intentional tort actions against police officers"). The one year and 90 day statute of limitations therefore governs Plaintiffs' state-law claims against Erie County, as well as the state-law claims against the Erie County Sheriff's Department and East Aurora Police Department employees in their official capacities.

However, since General Municipal Law § 50-i governs only claims against municipal corporations and their employees in their official capacities, see Conte, 596 Fed. App'x at 5, the claims against the Erie County Sheriff's Department and East Aurora Police Department employees in their individual capacities are governed by the one-year

statute of limitations in C.P.L.R. § 215(1).  The incident at issue occurred on July 2, 2012.

Plaintiffs filed suit on September 23, 2013, approximately one year and 83 days later.

Accordingly, the motion for summary judgment dismissing the state-law claims against

the Defendants in their individual capacities is granted; however, the state-law claims may

move forward against the municipalities and against the individuals in their official

capacities.

    2.  <u>State Claims Against the East Aurora Defendants</u>

      Officer Braeuner argues that the false arrest, false imprisonment, assault, battery,

and malicious prosecution claims must be dismissed because they are substantially

similar to the claims made under § 1983.  Plaintiffs did not oppose Officer Braeuner's

arguments as to malicious prosecution and intentional infliction of emotional distress, nor

do they otherwise distinguish their state-law claims from the § 1983 claims that this Court

has already dismissed.  Because the claims are substantially similar, and because

Plaintiffs do not oppose this motion, Officer Braeuner's motion for summary judgment

dismissing the remaining state-law claims against him is granted.

      Because all the claims against Officer Braeuner have been dismissed, the state-

law claims against Chief Krowka must also be dismissed.  <u>See</u> <u>Harsco Corp. v. Segui</u>, 91

F.3d 337, 349 (2d Cir.1996) ("there being no surviving underlying theory of liability, the

*respondeat superior* claims were also properly dismissed").[8]

    3.  <u>Erie County</u>

      Erie County argues that the state-law claims against it must be dismissed because

it is not liable for acts of its employees.  In <u>Villar v. County of Erie</u>, New York's Fourth

---

[8] Because the claims against the East Aurora Defendants have been dismissed, this Court does not address
their remaining arguments.

Department affirmed the principle that, in the absence of a local law imputing such responsibility, a county may not be held responsible for the negligent acts of local law enforcement pursuant to a theory of *respondeat superior*. See 126 A.D.3d 1295, 5 N.Y.S.3d 747 (4th Dep't 2015); see also D'Amico v. Correctional Medical Care, Inc., 120 A.D.3d. 956, 991 N.Y.S.2d 687 (4th Dep't 2014); Mosey v. County Of Erie, 117 A.D.3d 1381 (4th Dep't 2014); Trisvan v. County of Monroe, 26 A.D.3d 875,984 N.Y.S.2d 706 (4th Dep't 2006).  Erie County has not adopted a local rule carving out an exception holding it liable for the acts of the Sheriff or Sheriff's office employees, see New York State Constitution, Article XIII, Section 13[a], and a county cannot be held liable on the theory of *respondeat superior* for the negligent acts of either the sheriff or sheriff's deputies absent a legislative assumption of responsibility.  Marashian v. City of Utica, 214 A.D.2d 1034, 626 N.Y.S.2d 646 (4th Dep't 1995) ("The 1989 amendment to the New York Constitution, article XIII, § 13(a) merely allows a county to accept responsibility for the negligent acts of the Sheriff; it does not impose liability upon the county for the acts of the Sheriff or his deputies on a theory of *respondeat superior*"); D'Amico, 120 A.D.3d at 959.

Plaintiffs argue that this Court should overlook precedent and find that Erie County is nevertheless liable for actions taken by the Sheriff's Deputies.  This Court disagrees. Based on the well-established rule set forth in Villar, the state-law claims against Erie County are dismissed.

4.  Sheriff Howard

Sheriff Howard argues that the state-law claims against him must be dismissed because "a sheriff cannot be held personally liable for the acts or omissions of his deputies while performing criminal justice functions, and that this principle precludes

vicarious liability for the torts of a deputy." D'Amico, 120 A.D.3d at 958 (internal quotation omitted).   Plaintiffs argue that the state-law claims should go forward, because the Sheriff's Deputies were performing a civil function.  Sheriff Howard acknowledges that a sheriff can be held liable for torts committed during an employee's performance of civil functions, but argues that the allegations here arise from the execution of criminal duties.

In Rager v. McCloskey, 305 N.Y. 75, 80, 111 N.E.2d 214, 217 (N.Y. 1953), a sheriff's deputy lawfully entered plaintiff's office in order to serve process, but, not finding plaintiff, refused to leave and remained until he was removed by police.  The Court of Appeals held that the sheriff could be held liable for the civil trespass of his deputy because, "[b]y 'the common law,' . . . 'a sheriff is liable in trespass for the acts of his deputy committed in the attempt to execute process, although without his direction or recognition.'"  Id. (quoting People ex rel. Kellogg v. Schuyler, 4 N.Y. 173, 181 (N.Y.1850)); see also Pond v. Leman, 1865 WL 3782 (N.Y. Gen. Term. 1865) ("A sheriff is liable for all the acts of his deputy, official in their character, in executing process, whether he knew the deputy had the process or not.").  This standard is no less applicable here.  Deputy Hoock was dispatched on a civil function, and is alleged to have committed trespass in the exercise of that function.  Sheriff Howard's motion for summary judgment is therefore denied as to the trespass claim.

However, once Deputy Hoock radioed for backup and told Plaintiffs that they were under arrest, he began executing criminal functions.  Deputy Hoock's actions, including radioing for backup and placing Plaintiffs under arrest, are not actions that can be undertaken by a private citizen.  Further, the arrest of the Plaintiffs and the alleged torts committed by Hoock and the other Deputies incident to that arrest have been found to be

the type for which a Sheriff is not liable.  See, e.g., Green v. Fulton Cty., 123 A.D.2d 88, 89, 511 N.Y.S.2d 150, 152 (3d Dep't 1987) (sheriff is not "vicariously liable for the torts of a Deputy emanating from the performance of a criminal justice function").  Accordingly, all state-law claims against Sheriff Howard are dismissed except Plaintiffs' trespass claim.

## D.    Punitive Damages

Finally, Defendants argue that claims for punitive damages are not recoverable against a municipality or against municipal employees in their official capacities.  Punitive damages are generally disallowed against municipalities and against municipal employees in their official capacities, see New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 122 (2d Cir. 2006), and Plaintiffs do not oppose this portion of the motion, stating that they seek punitive damages only as to Defendants in their individual capacities.  Accordingly, the motion is granted and punitive damages are dismissed as to the municipality and official capacity claims.

## E.    Plaintiffs' Motion

Plaintiffs have moved for summary judgment against all Defendants[9] on the claim of trespass.  Defendants contend that the motion should be denied because trespass is not a named cause of action in the Complaint, and "[m]otions for summary judgment should be decided on the claims as pled, not as alleged in motion papers."  N. Shipping Funds I, L.L.C. v. Icon Capital Corp., 998 F. Supp. 2d 301, 326 (S.D.N.Y. 2014).  Plaintiffs respond that the Complaint contains allegations sufficient to give notice of the cause of action, even if the cause of action is not expressly named.

---

[9] This Court has already found that the Erie County Sheriff's Department and East Aurora Police Department are not subject to suit.

"The function of the pleadings is to give opposing parties notice of the facts on which the pleader will rely, and, in the absence of prejudice to the opposing party, the court may allow the pleadings to be amended to conform them to the evidence at any time, even after judgment." Van Alstyne v. Ackerley Grp., Inc., 8 F. App'x 147, 154-55 (2d Cir. 2001) (citing Fed. R. Civ. P. 15(b)[10]); In re Schwartz, 36 B.R. 355, 357 (Bankr. E.D.N.Y. 1984) ("[W]hen deciding a motion for summary judgment the court may evaluate not just the issues presently tendered by the pleadings but those which can reasonably be raised in an amended pleading."). "Thus, an issue raised for the first time in a motion for summary judgment may start the amendment process." In re Kern, 567 B.R. 17, 27-28 (Bankr. E.D.N.Y. 2017) (citing In re Bennett Funding Group, Inc., 220 B.R. 743, 752-53 (Bankr. N.D.N.Y. 1997); Seaboard Terminals Corp. v. Standard Oil Co., 104 F.2d 659 (2d Cir. 1939)). "Once a district court has properly construed a motion for summary judgment as seeking leave to amend a pleading, the question of whether leave should be granted is controlled by the same principles that govern express motions to amend a pleading." Chartier v. Matthews Assocs., No. 93 CIV. 1212 (PKL), 1994 WL 582938, at *2 (S.D.N.Y. Oct. 20, 1994) (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)). That is, the court should allow the pleadings to be amended to conform to

---

[10] Although Rule 15(b) refers to amendments of the complaint during or after trial, courts have applied Rule 15(b) to conform pleadings to the proof offered at summary judgment. See, e.g., Clomon v. Jackson, 988 F.2d 1314, 1323 (2d Cir. 1993) ("[T]he undisputed facts as presented on the summary judgment motion served as a basis to deem the complaint amended to conform with the proof pursuant to Fed. R. Civ. P. 15(b)."); M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 213 n. 8 (E.D.N.Y. 2010) (deeming the complaint amended under Rule 15(b) to conform with the evidence presented on the summary judgment motion); Regent Ins. Co. v. Storm King Contracting, Inc., No. 06-CV-2879, 2008 WL 563465, at *13-14 (S.D.N.Y. Feb. 27, 2008) (applying Rule 15(b) standard where plaintiff sought to amend its claims at summary judgment to conform its pleadings to additional evidence revealed through discovery); In re Kern, 567 B.R. 17, 27 (Bankr. E.D.N.Y. 2017) (noting that "even if Plaintiffs' Complaint did not adequately allege" certain facts, "the Court may conform the pleadings to the evidence before it and deem the Complaint amended by the summary judgment pleadings").

the evidence if such amendment will not prejudice the other party.  See Fed. R. Civ. P. 15(b).

To plead a claim for trespass under New York law, Plaintiffs must allege an "intentional entry by defendants on to plaintiffs' land and the wrongful use without justification or consent."  Matthews v. Malkus, 377 F. Supp. 2d 350, 359 (S.D.N.Y. 2005). "[O]ne who lawfully enters upon land but remains thereon after being requested to leave is [also] subject to liability for trespass."  New York State Energy Research & Dev. Auth. v. Nuclear Fuel Servs., Inc., 561 F. Supp. 954, 967 (W.D.N.Y. 1983).  The first paragraph of the Complaint states:

> This civil rights action challenges the constitutionality of the Erie County Sheriff's Department's practice of serving civil process on the private property of civil litigants by *coming onto and/or remaining on private property after being instructed by the property owner to leave the property* and then pursuing questioning and criminal proceedings without probable cause.

(Docket No. 1 at ¶ 1 (emphasis added.)  This Court is persuaded that this, taken together with the other allegations in the Complaint that allege Deputy Hoock entered Plaintiffs' property and remained after being asked to leave,[11] sets forth facts sufficient to state a claim for trespass and put Defendants on notice of a trespass claim, even if trespass was not a named cause of action.  Accordingly, there is no basis for Defendants to claim surprise or prejudice by the trespass claim and this Court will deem the Complaint amended to include trespass as a cause of action.

---

[11] Additional allegations include id. at ¶ 17 ("Brian . . . advised Deputy Hoock that he would accept the papers and that this was private property and [Deputy Hoock] had to leave as he was trespassing. . . . Brian informed Deputy Hoock . . . that this was private property and the deputy needed to leave.); id. at ¶ 18 ("Instead of leaving the deputy attempted to ask Defendant Raymond Wierzbic who he was.  Raymond told him that unless he has a warrant he needs to get off the property.")

Defendants further argue that the trespass claim fails because Deputy Hoock's entry to Plaintiffs' property was privileged by virtue of his status as a law enforcement official.  See People v. Czerminski, 94 A.D.2d 957, 957-58, 464 N.Y.S.2d 83 (4th Dep't 1983) (policeman's entry onto private property is privileged "[i]f the purpose is the performance of his public duty").  Plaintiffs do not dispute that the entry was legal, but argue that Deputy Hoock's privilege ended when he was instructed to leave.  Although Defendants contend that Deputy Hoock had the privilege to remain on the property and that Plaintiffs erred by failing to "simply identify themselves and accept the Subpoena and Restraining Notice that Deputy Hoock was there to serve" (Docket No. 89-5 at 10), they cite no basis for dismissing a trespass claim where a property owner instructed a process server to leave and the process server failed to do so.

Further, as noted above, the New York Court of Appeals has held that a deputy sheriff who lawfully enters a property to serve process may be liable for civil trespass when he refuses to leave that property.  Rager, 305 N.Y. at 80, 111; see also Jones v. Maples, No. 131739/93, 1999 WL 1427659, at *3 (N.Y. Sup. Ct. July 12, 1999) (citing Rager and noting that "a person can be found liable for civil trespass by remaining on another's property without permission even though the initial entry was permitted or privileged"); United States v. Carloss, 818 F.3d 988, 1006 (10th Cir.) ("state officials no less than private visitors could be liable for trespass when entering [a property] without the homeowner's consent"), cert. denied, 137 S. Ct. 231, 196 L. Ed. 2d 178 (2016).  On Deputy Hoock's own testimony, that would appear to be the situation here.  Deputy Hoock testified that the Plaintiffs immediately ordered him to leave.  (Id. at 87.)  On cross-examination, when asked why he did not comply with the Plaintiffs' requests, Deputy

Hoock testified:  "It wasn't initially said to me, right away.  And, the pliers became an incident at that point."  (<u>Id.</u> at 139.)  This appears to be at odds with his earlier testimony that Brian's initial response to him was an instruction to get out (<u>id.</u> at 87), and that he did not notice the pliers until after he had been instructed to leave several times (<u>id.</u> at 89). He later confirmed that Raymond "told [him] numerous times to get off the property, even before he picked up the pliers."  (<u>Id.</u> at 166.)   Accordingly, by Deputy Hoock's own admission, he remained on the property after he had been instructed to leave.

Deputy Hoock testified that it was appropriate to remain on the property after he had been told to leave in order to complete service.  But "[a] trespasser, to be such, need not intend harm to or unlawful interference with the other's property and may in good faith believe that he or she or it is in some way entitled to enter or remain upon the property." <u>New York State Energy Research & Dev. Auth.</u>, 561 F. Supp. at 974; <u>see also</u> <u>Oliver v. United States</u>, 466 U.S. 170, 183, 104 S. Ct. 1735, 1744, 80 L. Ed. 2d 214 (1984) (noting that "the law of trespass confers protections from intrusion by others far broader than those required by Fourth Amendment interests").  Further, as found by Erie County Court Judge Pietruszka, who reversed Raymond and Brian's criminal convictions, Deputy Hoock completed service on Brian and, "[a]t the point that . . .Brian was served, the Deputy's obligation"—and his justification for entry onto Plaintiffs' property—"was discharged."  (Criminal Appeal at 5.)  Judge Pietruszka held that Deputy Hoock's actions were a violation of Plaintiffs' constitutional rights under <u>People v. De Bour</u>, 40 N.Y.2d 210, 352 N.E.2d 562 (1976) because he "failed to give any articulable basis to remain on the [Plaintiffs]' property and approach [ ]Raymond."  (<u>Id.</u> at 6.)

This Court therefore finds that Plaintiffs have proven that Deputy Hoock remained on the property at 49 Willis Road after being asked to leave, and that his remaining on the property was not justified or privileged.  As noted above, Sheriff Howard may also be liable for trespass under the theory of *respondeat superior*, but there is no trespass liability as to the remaining Sheriff's Deputies or Officer Braeuner.  "[L]aw enforcement personnel acting lawfully in the furtherance of their duty are excused from what may be otherwise trespassory acts."  Hand v. Stray Haven Humane Soc. & S.P.C.A., Inc., 21 A.D.3d 626, 628, 799 N.Y.S.2d 628 (3d Dep't 2005).  Because the other law enforcement personnel were summoned by Deputy Hoock and had reason to believe that exigent circumstances for entry existed, their entry onto the property was privileged.

However, the motion cannot be granted as to Deputy Hoock and Sheriff Howard because Plaintiffs have not proven a necessary element of a trespass claim:  that they were the owners and possessors of 49 Willis Road at the time of the incident.  Cornick v. Forever Wild Dev., 240 A.D.2d 980, 981, 659 N.Y.S.2d 914, 915 (3d Dep't 1997).  They have not provided a copy of the deed, or even a sworn affidavit from one of the owners claiming ownership and rights of possession.  Instead, they submit an attorney affidavit and a Statement of Material Facts stating that:  "Plaintiffs Brian Wierzbic and Angelene Wierzbic are the owners of the real property located at *42 Willis Road* in the Town of Aurora, County of Erie and State of New York."  (Docket Nos. 84-1 at ¶ 5; Docket No. 84-2 at ¶ 3 (emphasis added).)  This would appear to be the incorrect address, as all other evidence lists the site of the alleged trespass to be *49 Willis Road*.  Moreover, under Rule 56, a declaration used to support or oppose a motion for summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence, and

show that the [ ] declarant is competent to testify on the matters stated." Fed R. Civ. P. 56(c)(4). An attorney's affidavit or declaration not based on personal knowledge carries no weight. Omnipoint Commc'ns, Inc. v. Common Council of City of Peekskill, 202 F. Supp. 2d 210, 213 (S.D.N.Y. 2002); see also Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (holding that inadmissible statements in affidavits submitted in support of summary judgment motion are incapable of raising material issues of fact). When an affidavit does not comply with the requirements of Rule 56, the offending portions should be disregarded by the court. Wahad v. FBI, 179 F.R.D. 429, 435 (S.D.N.Y. 1998) (citing United States v. Alessi, 599 F.2d 513, 514-15 (2d Cir. 1979)). Although "a trial court is permitted to determine property ownership issues as a matter of law based upon documentary evidence," id., no admissible evidence that Plaintiffs own or possess the property at 49 Willis Road has been submitted here. Accordingly, Plaintiffs' motion for summary judgment on the trespass claim is denied.

## F.    Cross Claims

Having dismissed all claims against the East Aurora Defendants, their cross-claims against the Erie County Defendants are dismissed as moot.

## IV.    CONCLUSION

For the foregoing reasons (1) the Erie County Sheriff's Department, the East Aurora Police Department, Robert Braeuner, Ronald Krowka, and Erie County are dismissed as parties; (2) the First and Fifth Amendment claims are dismissed; (3) the federal law claims against Defendants in their official capacities are dismissed; (4) the state-law claims against Defendants in their individual capacities are dismissed; (5) Plaintiff's Complaint is deemed amended to include a claim for trespass, which is

dismissed as to all Defendants except Deputy Hoock and Sheriff Howard; (6) all other claims against Sheriff Howard are dismissed; (7) no punitive damages claims may be brought against any Defendant in his official capacity; and (8) the East Aurora Defendants' cross-claims are dismissed as moot.

## V.    ORDERS

IT HEREBY IS ORDERED, that the Motion for Summary Judgment by Defendants Robert Braeuner, East Aurora Police Department, and Ronald Krowka (Docket No. 81) is GRANTED;

FURTHER, that the Motion for Summary Judgment by Defendants County of Erie, Erie County Sheriff's Department, James Flowers, Michael Hoock, Timothy Howard, Thomas Was, and Jason Weisser (Docket No. 83) is GRANTED in part and DENIED in part;

FURTHER, that the Motion for Summary Judgment by Plaintiffs Angelene Wierzbic, Bernice Wierzbic, Brian Wierzbic, and Raymond Wierzbic (Docket No. 84) is DENIED.

FURTHER, that the Clerk of the Court is directed terminate parties the County of Erie, Erie County Sheriff's Department, the East Aurora Police Department, Robert Braeuner, and  Ronald Krowka.

SO ORDERED.

Dated: January 25, 2018
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge

33