UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RAYMOND WIERZBIC, BERNICE WIERZBIC,
BRIAN WIERZBIC, AND ANGELENE WIERZBIC,

                                      Plaintiffs,

v.                                                                   Case Number: 1:13-CV-00978-WMS-LGF

COUNTY OF ERIE,
ERIE COUNTY SHERIFFS DEPARTMENT,         **PRETRIAL STATEMENT**
ERIE COUNTY SHERIFF, TIMOTHY HOWARD,
Individually and in his official capacity,
DEPUTY ERIE COUNTY SHERIFF MICHAEL HOOCK,
Individually and in his official capacity,
DEPUTY ERIE COUNTY SHERIFF JASON WEISS,
Individually and in his official capacity,
DEPUTY ERIE COUNTY SHERIFF THOMAS WAS,
Individually and in his official capacity,
DEPUTY ERIE COUNTY SHERIFF JAMES FLOWERS
Individually and in his official capacity,
TOWN OF AURORA,
EAST AURORA POLICE DEPARTMENT,
EAST AURORA POLICE CHIEF RONALD KROWKA,
Individually and in his official capacity,
EAST AURORA POLICE OFFICER ROBERT BRAEUNER,
Individually and in his official capacity,

                                        Defendants.

---

## I.    LOCAL RULE 16(E)(2)(A) STATEMENT OF UNCONTESTED AND CONSENTED FACTS

**Statement of uncontested facts**

      On July 2, 2012 Erie County Sheriff's deputy Michael Hoock arrived at 49 Willis to

serve process in a civil action upon Raymond Wierzbic at approximately 3:00 p.m. (Criminal

trial transcript Dkt 84-5 p 82.)(all page numbers cited are from Dkt 84-5 unless otherwise noted)

He was in uniform and was driving a marked Erie County Sheriff's car. (84)  He was acting as a criminal deputy working n the Civil Process Division. (129)

Upon his arrival three of the plaintiffs, Raymond, Brian and Bernice, were in the driveway and started walking towards the deputy. (86)

Deputy Hoock asked them who Raymond Wierzbic was. (87) Brian started swearing at the Deputy and told him Raymond was not there. (87)  He refused to identify Raymond. (87)  Both Brian and Raymond were yelling profanities at Deputy Hoock.

Deputy Hoock explained that he was only there to serve Raymond (88-89)  There was some discussion about the fact that they had been served with process at their other property. (EBT transcript of Raymond Weirzbic at p. 19)  Raymond was acting in an irate manner and waving pliers at him aggressively (91). The deputy asked him to put the pliers down several times, but each time he refused and got more irate. (91-92)

Deputy Hoock then radioed for backup because he felt threatened (92).

Shortly thereafter Deputy Hoock advised Raymond Wierzbic that he was under arrest. (94)  At that point Brian "shoulder bumped" the deputy three to five times. (95) Deputy Hoock advised Brian to stop or he would arrest him for obstruction (96)  Brian did not stop and the deputy advised him that he was under arrest. (97) The situation was continuing to escalate (97)

Deputy Hoock attempted to pepper spray Raymond in an effort to subdue him so that he could make an arrest without getting injured (98)  The pepper spray failed however and caused Raymond to become even angrier. (99)  Raymond then approached Deputy Hoock and grabbed his vest and sunglasses (99).

Up to this point, Deputy Hoock had no physical contact with Raymond (99). Once Raymond grabbed Deputy Hoock, Brian began to grab the deputy as well (101) Deputy Hoock pushed Raymond in an effort to defend himself. (101) The scuffle lasted a short time and the East Aurora police were called. (102)

Deputy Flowers and Deputy Weiss were dispatched from the Sheriff's Office to back up Deputy Hoock (189, 253) The back up from the sheriff's office arrived at the same time as Officer Braener of the East Aurora police department (102, 254) Hoock told them that Brian and Raymond were under arrest. (103) Deputy Hoock then attempted to handcuff Raymond (103).

Raymond refused to allow Deputy Hoock to place his arms behind his back. (103) Raymond became combative, punching Deputy Hoock. (104, 191) Deputy Hoock then placed Raymond in a headlock so as to avoid additional punches (104). Raymond continued to fight and had Deputy Hoock in a headlock (104) The two men were bent over. Deputy Hoock had Raymond in a headlock with his right arm and Raymond had Deputy Hoock in a headlock with his left arm. They fell to the ground (105) Raymond continued to resist the arrest and to actively fight with Deputy Hoock (106)

Deputy Flowers went to assist because Deputy Hoock appeared to be at a disadvantage. (191) Flowers grabbed Raymond's right arm and advised him to place it behind his back. (191) Raymond refused to comply and instead reached towards the area where Flowers' gun was and Raymond's own waistband (191, 198) Flowers realized that he was not strong enough to force Raymond's arm behind his back so he warned him that if he continued to resist he was going to be pepper sprayed. (194) Flowers warned Raymond at least three times that he was going to get

sprayed if he did not stop resisting . (36) Raymond did not comply and Flowers applied two short bursts of pepper spray to Raymond (195-6)

Flowers felt threatened because Raymond weighed 100 lbs more that he did and the two officers were physically unable to handcuff him. (199)

Even after being pepper sprayed, Raymond continued to fight for a short period (200) It took four officers and two pairs of handcuffs to handcuff Raymond (201)

While Deputy Hoock was trying to place Raymond under arrest, Brian was attempting to intercede so Deputy Weiss placed himself between Brian and the arrest. (256)  Brian was yelling and pushed and grabbed Deputy Weiss. (256) Weiss kept telling Brian to stop or he would get arrested. (256) Brian refused to stop and instead took a swing at Weiss. (257)  At that point Weiss determined he was under arrest (257) Brian struggled to keep from being handcuffed but Weiss was able to secure him (258)  Weiss was then able to turn his attention to Raymond's arrest because he was still resisting (258)

Upon his arrival, Officer Braener witnessed Bernice yelling for the East Aurora Police Department.  Braener attempted to explain to Bernice that he was from the EAPD (38  He tried to keep her away from the struggle with Raymond so that she would not get arrested. (39). Bernice then struck him in the chest so he arrested her for obstruction. (39-40)

Once all three had been arrested, decontamination of Raymond with water from a nearby garden hose was undertaken (202) He was in a seated position while the pepper spray was rinsed from his face.(202-3)  Raymond repeatedly asked that the water be administered to his face and head (45) It was not forced on him (45)

Deputy Was was not involved in the arrest or altercation with any of the plaintiffs (306)

**Contested Facts**

1.  In Judge Skretny's decision on the motions for summary judgment, it is asserted that service of process was completed by Deputy Hoock at the 49 Willis Road address prior to the arrests. (See Dkt. 98 at p. 5) This assertion is purported to be based upon Hoock's testimony at pages 163-165. However, the testimony does not reflect that service of process was made at that time. Rather, the affidavit of service submitted as Trial Exhibit O, establishes that service of process was not effectuated until 6:30 p.m. and it was done at 1600 Bowen Road - the Sheriff's District 3 location - where the plaintiffs were taken for processing after arrest. This is confirmed by the deposition testimony of Bernice Wierzbic (pp 53-54) submitted as Trial Exhibit C. Accordingly, we believe this is a question of fact for trial.

2.  The Decision at page 3 states that Deputy Hoock's testimony that he wasn't initially told to leave was at odds with his earlier testimony. (Dkt 98). The deposition testimony of Raymond (page 19) and Brian (p 28)("did you tell him to get the – off your property?...Eventually") and Hoocks testimony (136-7) establish that there was conversation about having already been served process at their house in Orchard Park before there was any request for Deputy Hoock to leave. Accordingly, this is a question of fact for trial rather than a foregone conclusion as is implied by the decision.

**II.     LOCAL RULE 16(E)(2)(B)  ISSUES OF LAW**

A.     Post summary judgment, upon information and belief the parties agree that the following causes of action remain in this action:

    1.     1983 Claims against Sheriff's Deputies in their individual capacities

    2.     State law claims against the Sheriff's Deputies in their official capacities

    3.     Punitive Damages against the individual Sheriff's Deputies

    4.     Trespass claim against Sheriff Howard (and Sheriff's Deputies in their official capacities)

B.     There are some additional items which the defendants would like to address in order to streamline the issues at trial.  The defendants are happy to brief the issues for fully should the Court so desire, but hopefully some, if not all, of the issues can be stipulated to by the parties.

    1.     The federal excessive force claim incorporates that state claims for assault and battery and therefore the state claims do not need to be addressed on the verdict sheet.

    2.     The federal malicious prosecution claim incorporates the false arrest and false imprisonment claims and therefore the state claims do not need to be addressed on the verdict sheet.

    3.     1983 Conspiracy claims must be dismissed as barred by the intracorporate conspiracy doctrine.  It bars conspiracy claims against employees of entities (when those employees are alleged to have conspired solely with each other) unless the employees were

pursuing personal interests wholly separate and apart from the entity by whom they were employed.  *Warr v. Libertore* 270 F.Supp. 3d 637, 651 (WDNY 2017)

Complaint alleges that Deputies were all employed by ECSD ¶7.  Conspiracy allegations at ¶47, 48 include Braener who has been dismissed from the proceeding altogether and therefore the conspiracy allegations are only against Sheriff's deputies and cannot stand.

4. State law claims for negligent hiring, training, supervision and retention must be dismissed as it was dismissed as to the Sheriff and there is therefore no party against which the claim can stand.

5. The evidence establishes that Deputy Was was not involved in the altercation in any fashion and the action should be discontinued against him. (Dkt 84-5 p 306)

6. Deputies Weiss and Flowers arrived on the scene to back up Deputy Hoock at the same time as Officer Braener and were therefore situated identically to Officer Braener against whom all claims were dismissed by the Decision on the motion for summary judgment. (Dkt 98)  Therefore the law of the case requires that the excessive force, failure to intercede, false arrest, false imprisonment, and malicious prosecution claims against them be dismissed.

Deputy Weiss arrested Brian Wierzbic only after Brian refused to stop pushing him and actually took a swing at him (Dkt 84-5, p 256-258).  Probable cause for an arrest exists where plaintiff made forcible contact with defendant officer's body. (Dkt 98 at p19). Probable cause is a complete defense to an action for false arrest and false imprisonment. (Dkt 98 at p. 18) Brian struggled to keep from being handcuffed (Dkt 84-5, p 258) There is no excessive force where plaintiff had been actively resisting arrest. (Dkt 98 at p. 15).

Deputy Flowers responded to a call for back up and saw Raymond Weirzbic actively resisting Deputy Hoock's attempts to arrest him. (Dkt 84-5 p. 191). Deputy Flowers "entered a situation where [Deputy Hoock] appeared to be in danger" (Dkt 98 at p. 17) It was objectively reasonable for Deputy Flowers to believe probable cause for the arrest of Raymond Wierzbic existed. (Dkt 98 at pp. 17-19). Probable cause is a complete defense to an action for false arrest and false imprisonment. (Dkt 98 at p. 18) Brian struggled to keep from being handcuffed (Dkt 84-5, p 258) There is no excessive force where plaintiff had been actively resisting arrest. (Dkt 98 at p. 15).

### III.   LOCAL RULE 16(e)(2)(C) PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

Proposed Charge and Verdict Sheet are attached hereto as Exhibits A and B, respectively.

### IV.   LOCAL RULE 16(e)(2)(D) WITNESS LIST

Michael Hoock
Jason Weiss
James Flowers
Thomas Was
Each witness is expected to testify about the events of July 2, 2012.

### V.   LOCAL RULE 16(e)(2)(E) EXPERT WITNESS INFORMATION

Not applicable

### VI.   LOCAL RULE (16(e)(2)(F) LIST OF EXHIBITS

Defendants' list of Exhibits is submitted herewith as Exhibit C.

## VII. LOCAL RULE (16(e)(2)(G) DEPOSITION TESTIMONY

It is anticipated that the deposition or other sworn testimony of the following individuals will be used at trial:

Raymond Wierzbic

Brian Wierzbic

Bernice Wierzbic

Angeline Wierzbic

Dated: October 26, 2018
       Buffalo, New York

                                              Jennifer C. Persico, Esq.
Lippes Mathias Wexler Friedman LLP
*Attorneys for Defendants County of Erie, Erie County Sheriff's Department, Timothy Howard, Michael Hoock, Jason Weiss, Thomas Was, and James Flowers*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: (716) 853-5100
E-Mail: jpersico@lippes.com

To:    Paul E. Fallon, Esq.
        *Attorney for Plaintiffs*
        57 High Park Blvd.
        Amherst, New York 14226
        Telephone: (716) 830-2931
        E-Mail: pfallon6458@gmail.com

        Daire Brian Irwin, Esq.
        *Attorney for Plaintiffs*
        210 Voorhees Avenue
        Buffalo, New York 14216
        Telephone: (716) 822-7645
        E-mail: dbi59@roadrunner.com